UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| **CHAPA BLUE, LTD. AND BLUE MOUNTAIN DEVELOPMENT, LTD.** § § § § § § § § § § | **CASE NO. 7:23-cv-334** |
| **VS.** | |
| **ACCREDITED SURETY AND CASUALTY COMPANY, INC.** | |

**<u>PLAINTIFFS' AMENDED COMPLAINT</u>**

TO THE HONORABLE RICARDO H. HINOJOSA, U.S. DISTRICT COURT JUDGE:

NOW COME, CHAPA BLUE, LTD and BLUE MOUNTAIN DEVELOPMENT, LTD (hereinafter referred to as "PLAINTIFFS"), and file this, their First Amended Complaint against Defendant Accredited Surety and Casualty Company, Inc., and for such cause of action respectfully shows unto the Court and Jury as follows:

**JURISDICTION**

1. This case was originally filed in the 206th Judicial District Court of Hidalgo County, Texas, and all claims asserted arose under state law. Defendant removed, asserting federal diversity jurisdiction pursuant to 28 U.S.C. §1332. This Court has diversity jurisdiction because the parties are citizens of different States and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

**SERVICE OF PROCESS**

2. Defendant is in the business of providing insurance in the State of Texas.

3. Defendant has appeared, and no further service is necessary.

**VENUE**

4. Venue is also proper in this judicial district and division pursuant to 28 U.S.C. §1391(b)(2) because Plaintiffs' insured real properties made the basis of this suit are situated in this district and division, and all or a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district and division.

**FACTS**

5. Plaintiffs own the insured properties, which are specifically located at 4313 N. Conway Ave., Palmhurst, Texas 78573, with Policy # 1ABPTX05132767100; Claim # ABPAC23050017; and 141 Paseo del Prado, Edinburg, Texas 78539, with Policy# 1ABPTX05127938701; Claim # ABPAC23050033, respectively (hereinafter referred to as "the Properties").

6. On or about April 29, 2023, a storm struck Hidalgo County, Texas causing damages to homes and businesses throughout the area, including Plaintiffs' properties ("the Storm"). Specifically, Plaintiffs' roofs sustained extensive damage during the Storm. Plaintiffs' properties also sustained damages to the architectural finishes of the properties. After the Storm and in compliance with the Policy, Plaintiffs filed a claim with Accredited Surety for the damages to their properties caused by the Storm.

7. Plaintiffs submitted claims to Accredited Surety against the Policies for roof damage, exterior damage, and interior damage caused by the Storm. Plaintiffs asked that Defendant cover the costs of repairs to the Properties pursuant to the Policy.

8. On June 29, 2023, Plaintiff Chapa Blue, Ltd. submitted a demand letter to Defendant, through its counsel, for damages to the property, amounting to $386,080.33, which included interests and attorney's fees. Of that amount, $368,639.54 represent the economic damages found by the estimator on behalf of Plaintiff Chapa Blue, Ltd.

9.      On August 2, 2023, Plaintiff Blue Mountain, Ltd. submitted a demand letter to Defendant, through its counsel, for damages to the property, amounting to $229,534.78, which included interests and attorney's fees. Of that amount, $215,218.93 represent the economic damages found by the estimator on behalf of Plaintiff Blue Mountain, Ltd.

10.     After submitting the claim, Defendant assigned an adjuster, Luis F. Miller, to evaluate damages to Plaintiff Chapa Blue, Ltd.'s Property. At the start of the process, which was on or around May 18, 2023, Defendant's adjuster told Plaintiff that the damage to the property would be fully covered and that Plaintiff had nothing to worry about. Defendant's adjuster knew this was a false statement when made because, prior to inspecting the property, Mr. Miller knew that Defendant would not pay any amount for the covered damage. Defendant trains its adjusters to ignore covered damage and/or (depending on the circumstances) to calculate damages so that the total estimated cost of repairs is below a policyholder's deductible. Thus, Defendant's adjuster's statement that Plaintiff's damage to his property would be fully covered was false when made, completely aware that it was false.

11.     After submitting the claim, Defendant assigned an adjuster, Kevin Mayfield, to evaluate damages to Plaintiff Blue Mountain Development, Ltd.'s Property. At the start of the process, which was on or around May 9, 2023, Defendant's adjuster told Plaintiff that the damage to the property would be fully covered and that Plaintiff had nothing to worry about. Mr. Miller knew this was a false statement when made because, prior to inspecting the property, Mr. Miller knew that Defendant would not pay the fair amount for the covered damage. Defendant trains its adjusters to ignore covered damage and/or (depending on the circumstances) to calculate damages so that the total estimated cost of repairs hovers near a policyholder's deductible. Thus, Mr.

Mayfield's statement that Plaintiff's damage would be fully covered was false when made, completely aware that it was false.

12. The adjusters assigned by Defendant failed to reasonably perform an investigation into the damages sustained by the Plaintiffs. Specifically, the adjusters spent less than one hour in assessing damages and then determined there was minimal storm damage to Plaintiffs' properties, and in Chapa Blue, Ltd.'s case, no payment was issued, and in Blue Mountain Development, Ltd.'s case, a small payment was issued. Much more time would have been needed to conduct an adequate inspection due to the size of Plaintiffs' properties and the extent of the damage Plaintiffs identified.

13. Plaintiff Chapa Blue, Ltd. identified 8 major areas in its property with damage caused by storm-created openings, which is damage covered by the Policy. Those areas include the roof, the exterior, and 6 suites, some of which identified damages to the bathrooms, the washrooms, the dryer room, the lobbies, the kitchen, the hallways, and the breakroom. The roof is severely damaged as a result of the storm, which is damage covered by Plaintiff's policy. In sum, Mr. Miller ignored all of these aforementioned areas by refusing to conduct an adequate inspection. Defendant trains its adjusters to conduct outcome-oriented inspections in an expeditious fashion.

14. Similarly, Plaintiff Blue Mountain Development, Ltd. identified 3 major areas in its property with damage caused by storm-created openings, which is damage covered by the Policy. Those areas include the TPO roof, the exterior, and the interior, which includes the entry/foyer, the administration area, the IT room, the conference room, the break room, the office, and a long hallway. The roof is severely damaged as a result of the storm, which is damage covered by Plaintiff's policy. In sum, Mr. Mayfield ignored all of these aforementioned areas by refusing

to conduct an adequate inspection. Defendant trains its adjusters to conduct outcome-oriented inspections in an expeditious fashion.

15. The inspections were done in an outcome-oriented way and in an expeditious fashion, as well. The size of the roofs would have necessitated over one and a half hours to do a proper and thorough inspection. Defendant's adjusters spent less than 30 minutes inspecting the roofs and ignored several affected areas due to the storm winds, which are damages covered by Plaintiffs' policies.

16. As a result of Mr. Miller's unreasonable investigation, Plaintiff Chapa Blue Ltd.'s claim was improperly adjusted. Defendant's calculation of the covered damage was significantly deficient, as Defendant purposefully ignored areas with covered damage. Namely, Mr. Miller found $13,434.82 in damages, which is way below Plaintiff's deductible of $45,750.00. Because Mr. Miller failed to properly inspect and account for the covered losses, Defendant issued no payment to Plaintiff for the extensive damage to its property. In fact, Defendant trains adjusters to calculate just enough damage so that the total amount of replacement cost value will be less than or very close to a policyholder's deductible, regardless of the actual damage present in the subject properties. Such a policy allows Defendant to mandate that policyholders make repairs to their properties out of their own pocket, thereby releasing Defendant of its obligation to make any payment to the policyholder for those repairs.

17. By the same token, as a result of Mr. Mayfield's unreasonable investigation, Plaintiff Blue Mountain Development, Ltd.'s claim was improperly adjusted. Defendant's calculation of the covered damage was significantly deficient, as Defendant purposefully ignored areas with covered damage. Namely, Mr. Mayfield found $22,570.31 in damages, which after subtracting the deductible and depreciation, resulted in an underpayment of $12, 692.55. Because

Mr. Mayfield failed to properly inspect and account for the covered losses, Defendant issued an underpayment to Plaintiff for the extensive damage to its property. In fact, Defendant trains adjusters to calculate just enough damage so that the total amount of replacement cost value will be less than or very close to a policyholder's deductible, regardless of the actual damage present in the subject properties. Such a policy allows Defendant to mandate that policyholders make repairs to their properties out of their own pocket, thereby releasing Defendant of its obligation to make adequate payment to the policyholder for those repairs.

18. A subsequent estimate of the covered damages revealed that the estimated repairs for Plaintiffs' property were over $368,000 and $215,000, respectively, well above Plaintiffs' deductibles. The difference in repair estimates is due directly to Defendant purposefully overlooking covered damages to the various areas identified by Plaintiffs. Instead, Defendant under-scope the losses, in the hope of escaping liability.

19. As a result of Defendant's conduct, Plaintiffs did not receive the payments they were entitled to under the Policies for the Storm damages and losses. As previously stated, when Plaintiff originally purchased the Policy issued by Accredited, Defendant's agent represented on behalf of Accredited Surety that it would always conduct a fair and unbiased investigation of Plaintiffs' claims against the Policy and promptly issue payment to Plaintiffs for all properly covered hailstorm and windstorm damages to the Properties. Defendant's agent knew this statement was false at the time it was made. Defendant's agent knew that Accredited Surety conducted outcome-oriented investigations and purposefully calculated damage estimates below or slightly close to a policyholder's deductible, all to ensure that Defendant would not have to pay, or would have to pay very little, to policyholders for covered damages. At no time did Accredited or any of its agents disclose to the Plaintiffs that, in fact, it would conduct an unreasonable, unfair,

and/or biased investigation of the claims that Plaintiffs submitted against the Policy for hailstorm and/or windstorm damages to the Property and thereby deny or underpay Plaintiffs' claims for properly covered hailstorm and/or windstorm damages to the Property. The failure to disclose this truth was a material omission by Accredited Surety's agent. As such, Plaintiffs reasonably relied on Accredited Surety's misrepresentations and omissions upon purchasing their initial insurance policies, and but for Accreditted Surety's misrepresentations and omissions, Plaintiffs would not have purchased the Policies and would have purchased an insurance policy from a different insurer to insure their Property against storm losses.

20. As indicated in the paragraphs above and below, Accredited Surety wrongfully adjusted Plaintiffs' claims for damages suffered during the Storm, even though the Policy provided for those losses. Defendant knew that it had conducted an outcome-oriented investigation, had purposefully ignored covered damage, all the time knowing that it was wrongfully refusing to adequately pay for covered damages. Every day that passes without payment to Plaintiffs for the covered damages is another day in which Defendant is purposefully delaying payment because it knows that Plaintiffs have more covered damages than were initially estimated.

21. Defendant failed to perform its contractual duties to adequately compensate Plaintiffs under the terms of the Policy. Specifically, Defendant, through its various agents, wrongfully denied and underpaid Plaintiffs' claims for covered damages, even though all conditions precedent to recovery upon the Policy had been carried out by the Plaintiffs. Accredited Surety's conduct constitutes breach of the insurance contract between Defendant and Plaintiffs.

22. Defendant failed to make an attempt to settle Plaintiffs' claims in a fair manner when its adjusters failed to perform a reasonable investigation into Plaintiffs' damages. Specifically, the adjusters spent less than one hour in assessing damages and then determined that

the damages were minimal. All this despite Defendant's actual awareness of its liability to the Plaintiffs under the Policy. This constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. Tex. Ins. Code § 541.060(a)(2)(A).

23. Defendant refused to fully compensate the Plaintiffs under the terms of the Policy for covered losses. Specifically, Defendant performed an outcome-oriented investigation of Plaintiffs' claim, purposefully ignored covered damage, and purposefully denied and underpaid Plaintiffs' claims on the properties, all of which resulted in a biased, unfair, and inequitable evaluation of Plaintiffs' losses on the Property. This constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. Tex. Ins. Code § 541.060(a)(7).

24. When Plaintiffs first purchased the Policy from Defendant through its agent, Defendant misrepresented to Plaintiffs that under the Policy, Plaintiffs would be entitled to payment from Accredited Surety for damages caused by a covered loss, including hailstorm and/or windstorm losses, and that it would conduct an unbiased and reasonable investigation of any claim Plaintiffs timely submitted against the Policy. This was a misrepresentation because the agent knew that Defendant would not pay for such damages, as described above. If Plaintiffs had known that Accredited Surety was not going to pay for storm damages that were covered under the Policy, Plaintiffs would not have purchased the Policy from Accredited Surety, and instead would have purchased a different insurance policy insuring their Property from a different insurer. Defendant made material misrepresentations as to coverage under the Policy upon Plaintiffs purchasing the Policy that misled Plaintiffs, including untrue statements of material facts and wrongfully concealed material facts necessary to make Accredited Surety's other representations also misleading, upon which Plaintiffs reasonably relied to their detriment. Defendant's conduct constitutes a violation of the Texas Insurance Code, Misrepresentation of Insurance Policies. Tex.

Ins. Code §§ 541.061(1), (2), (3), and (5), as well as violations of Texas Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Comm. Code §§17.41-.63.

25. Defendant Accredited Surety failed to meet its obligations under the Texas Insurance Code regarding payment of claims without delay by dragging the process of obtaining a decision through months of bitter dispute, when Defendant already knows that Plaintiffs are entitled to coverage under the terms of the policy. Specifically, Defendant has delayed payment for Plaintiffs' claims. Defendant's conduct constitutes a violation of Texas Insurance Code, Prompt Payment of Claims. Tex. Ins. Code § 542.058.

26. From and after the time Plaintiffs' claims were presented to Defendant, the liability of Accredited Surety to pay the claims in accordance with the Policy was reasonably clear. However, Defendant has refused to properly pay Plaintiffs for the claims, despite there being no basis whatsoever on which a reasonable insurance company would have relied to deny full payment. Accredited Surety's conduct constitutes a breach of the common law duty of good faith and fair dealing.

27. Defendant knowingly and recklessly made false representations, as described above, as to the material facts and/or knowingly concealed all or part of material information from the Plaintiffs.

28. As a result of Defendant's conduct, Plaintiffs were forced to retain the professional services of an attorney and law firm to represent them with respect to these causes of action.

## CAUSES OF ACTION

29. Plaintiffs are not making any claims for relief under federal law.

30. Defendant is liable to Plaintiffs for intentional breach of contract, DTPA violations, as well as intentional violations of the Texas Insurance Code, and intentional breach of the common law duty of good faith and fair dealing.

### BREACH OF CONTRACT

31. Defendant's conduct constitutes a breach of the insurance contract made between Accredited Surety and Plaintiffs.

32. Defendant's failure and/or refusal to pay the adequate compensation as it is obligated to do under the terms of the Policy in question, and under the laws of the State of Texas, constitutes a breach of Defendant's insurance contract with the Plaintiffs.

### NONCOMPLIANCE WITH TEXAS INSURANCE CODE:
### UNFAIR SETTLMENT PRACTICES/PROMPT PAYMENT

33. Defendant's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. Tex. Ins. Code §§ 541.060(a), 541.061. All violations under this article are made actionable by Tex. Ins. Code § 541.151.

34. Defendant's unfair settlement practice, as described above, of misrepresenting to Plaintiffs material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code § 541.060(a)(1).

35. Defendant's unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of this claim, even though Defendant's liability under the Policy was reasonably clear, constitutes an unfair method of competition and un unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code § 541.060(a)(2)(A).

36. Defendant's unfair settlement practice, as described above, of failing to promptly provide Plaintiffs with a reasonable explanation of the basis in the Policy, in relation of the facts or applicable law, for its denial of the claim, constitutes an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code § 541.060(a)(3).

37. Defendant's unfair settlement practices, as described above, of refusing to properly pay Plaintiffs' claims without conducting a reasonable investigation, constitute an unfair method of competition and unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code § 541.060(a)(7).

38. Defendant's unfair or deceptive acts and/or practices of misrepresenting the Policy, as described above and otherwise herein, by: (1) making untrue statements of material fact, (2) failing to state material facts necessary to make other statements it made not misleading, (3) making a statement(s) in a manner that would mislead a reasonably prudent person to a false conclusion of material fact, and which in fact misled Plaintiffs to false conclusions of material fact regarding coverage under the Policy, and/or (4) failing to make a disclosure as required by law and/or in accordance with another provision of the Insurance Code, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code § 541.061.

39. Defendant's denial and delay of the payment of Plaintiffs' claims following its receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided for, constitutes a non-prompt payment of this claim. Tex. Ins. Code § 542.058.

## DTPA VIOLATIONS

40. Defendant's conduct constitutes multiple violations of the DTPA. Tex. Bus. & Comm. Code §§17.41-.63. Plaintiffs are "an individual, a partnership, or a corporation" that sought or acquired goods or services by purchase or lease from Defendant, and therefore qualifies as a consumer under the DTPA. Tex. Bus. & Comm. Code §17.54(4). Plaintiffs have met all the conditions precedent to bringing this cause of action against Defendant. Specifically, Defendant's violations of the DTPA include, without limitation, the following matters:

   a. Defendant's actions, as described in this Complaint, are unconscionable in that Defendant's actions took advantage of Plaintiffs' lack of knowledge, ability, and experience to a grossly unfair degree. Defendant's unconscionable conduct gives Plaintiffs a right to relief under section17.50(a)(3) of the DTPA.

   b. Defendant's conduct, acts, omissions, and failures, and described in this Complaint, are unfair practices in the business of insurance in violation of section 17.50(a)(4) of the DTPA.

41. The above-described acts, omissions, and failures of the Defendant are a producing cause of Plaintiffs' damages as described in this Complaint. The above-described acts, omissions, and failures of the Defendant were committed "knowingly" and "intentionally," as those terms are defined by the Texas Deceptive Trade Practices Act.

**BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING**

42. Defendant's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to insureds in insurance contracts.

43. Defendant's failure, as described above, to adequately and reasonably investigate and evaluate Plaintiffs' claims, although, at that time, Defendant knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

## KNOWLEDGE

44. Each of the acts described above, together and singularly, was done "knowingly," as that term is used in the Texas Insurance Code and was a producing cause of Plaintiffs' damages described herein.

## DAMAGES

45. Plaintiffs would show that all of the aforementioned acts, taken together or singularly, constitute the producing cause of the damages sustained by the Plaintiffs.

46. These damages are a direct result of Defendant's mishandling of Plaintiffs' claims, in direct violation of the laws, as set forth above.

47. For breach of contract, Plaintiffs are entitled to regain the benefit of their bargain, which is the amount of their claim, together with attorney's fees.

48. For noncompliance with the DTPA and Texas Insurance Code, Unfair Settlement Practices, Plaintiffs are entitled to actual damages, which includes the loss of the benefits that should have been paid pursuant to the Policy, mental anguish, court costs, and attorney's fees. For "knowing" conduct of the acts described above, Plaintiffs ask for three times his actual damages. Tex. Ins. Code § 541.152.

49. For noncompliance with the Texas Insurance Code, Prompt Payment of Claims, Plaintiffs are entitled to the amount of his claim, as well as ten (10) percent interest per annum on the amount of such damages claimed, together with attorney's fees.

50. For breach of the common law duty of good faith and fair dealing, Plaintiffs are entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, exemplary damages, and damages for emotional distress.

51. For the prosecution of this claim, Plaintiffs have been compelled to engage the services of the attorney whose name is subscribed to this pleading. Therefore, Plaintiffs are entitled to recover a sum for the reasonable and necessary services of Plaintiffs' attorney in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

52. Plaintiffs would further show that the acts and omissions of Defendant and its agents, adjusters, employees and/or representatives complained of herein were committed knowingly, willfully, intentionally, with actual awareness, and with the specific and predetermined intention of enriching said Defendant at the expense of Plaintiffs. In order to punish said Defendant for such unconscionable overreaching and to deter such actions and/or omissions in the future, Plaintiffs request exemplary damages pursuant to 17.50(b)(1) of the Texas Business and Commerce Code and § 541.152(b) of the Tex. Ins. Code.

**JURY DEMANDED**

53. Plaintiffs assert their rights under the Seventh Amendment to the U.S. Constitution and demand, in accordance with Federal Rule of Civil Procedure 38, that all causes of action herein be tried before a jury consisting of citizens residing in Hidalgo County, Texas.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that upon trial hereof, said Plaintiffs have and recover such sums as would reasonably and justly compensate them in accordance with the rules of law and procedure, as to actual damages, treble damages under the Texas Insurance Code, and all punitive and exemplary damages as may be found. In addition, Plaintiffs request the award of attorney's fees for the trial and any appeal of this case, for all costs of Court on his behalf expended, for pre-judgement and post-judgement interest as allowed by law,

and for any other and further relief, either at law or in equity, to which they may show themselves justly entitled.

Dated: October 13, 2023

Respectfully submitted,

/s/ Jose A. Chapa, Jr.
Jose A. Chapa, Jr.
*Attorney-in-Charge*
S.D. Tex. Bar No. 3410000
**JOSE A. CHAPA LAW FIRM, PLLC**
Tex. Bar No. 24113688
3116 Scenic Way Ave
McAllen, Texas 78503
Telephone: (214) 629-0788
jachapa@smu.edu

**ATTORNEY FOR PLAINTIFFS**
